IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

Plaintiff,

v.

DOUGLAS T. WILLIAMS,

Defendant.

Case No. 3:22-CR-30143-NJR-1

MEMORANDUM AND ORDER

ROSENSTENGEL, Chief Judge:

Pending before the Court is a Motion to Dismiss the Indictment filed by Defendant Douglas T. Williams. (Doc. 27). On December 13, 2022, a grand jury charged Williams with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). Williams had previously been convicted in the Circuit Court of St. Clair County, Illinois, of numerous felonies, including three counts of felony burglary, one count of felony aggravated discharge of a firearm, and one count of felony unlawful possession of methamphetamine. (Doc. 30). Williams now moves to dismiss the indictment, arguing that 18 U.S.C. § 922(g)(1), as applied to him, violates the Second Amendment in light of the United States Supreme Court's holding in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). For the reasons set forth below, the motion is denied.

LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a

Page 1 of 9

trial on the merits." Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds. *See United States v. Coscia*, 866 F.3d 782, 790 (7th Cir. 2017) (considering defendant's contention that the indictment must be dismissed because the statute under which it is brought is unconstitutionally vague). A court may decide all questions of law raised in a motion to dismiss, including the constitutionality and interpretation of a federal statute. *See United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008).

A constitutional challenge to a statute can be brought as either a facial challenge or an as-applied challenge. *United States v. Stork*, No. 2:21-CR-7 JD, 2024 WL 2955735, at *2 (N.D. Ind. June 12, 2024). To succeed on an as-applied challenge, as Williams raises here, the moving party must show the statute is unconstitutional because of the way it was applied to the particular facts of their case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

## DISCUSSION

The Second Amendment to the U.S. Constitution guarantees the right of the people to keep and bear arms. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). At the same time, 18 U.S.C. § 922(g)(1) criminalizes the possession of a firearm by any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year. Williams first argues that the plain text of the Second Amendment protects the right to bear arms as to all Americans, including felons. Thus, under *Bruen*, the government must show § 922(g)(1) is consistent with the nation's historical tradition of firearm regulation. Second, he argues, § 922(g)(1) is unconstitutional as applied to him.

The Supreme Court has held that the right to keep and bear arms is among the "fundamental rights necessary to our system of ordered liberty." *United States v. Rahimi*, 144 S. Ct. 1889, 1897 (2024) (quoting *McDonald v. Chicago*, 561 U.S. 742, 778 (2010)). "Like most rights," though, "the right secured by the Second Amendment is not unlimited." *Id.* (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)).

The test for analyzing the constitutionality of firearm restrictions is provided by *Bruen*. 597 U.S. at 24. Under *Bruen*, a court must first determine whether the "Second Amendment's plain text covers an individual's conduct." 597 U.S. at 24. If so, the Constitution presumptively protects that conduct and the burden shifts to the government to demonstrate that the regulation "is consistent with this Nation's historical tradition of firearm regulation." *Id.* To determine whether a challenged law is consistent with the country's "regulatory tradition," courts "must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 29).

Courts also must examine "[w]hy and how the regulation burdens the right." *Id.* "[I]f laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* But even if the reason for the regulation is permissible, the law "may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id.* "And when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous

enough to pass constitutional muster.'" *Id.* (quoting *Bruen*, 597 U.S. at 30). Although *Rahimi* addressed § 922(g)(8), which bars individuals subject to restraining orders from possessing guns in the home, the Supreme Court reiterated its holding in *Heller* that many such prohibitions, like those on the possession of firearms by "felons and the mentally ill" are "presumptively lawful." *Id.* at 1891 (quoting *Heller*, 554 U.S. at 626, 627, n. 26).

Here, Williams first argues that the plain text of the Second Amendment covers the possession of firearms by all Americans, including felons like himself. Citing *Bruen* and *Heller*, among other cases, the Government disagrees and asserts that the Supreme Court's interpretation of the Second Amendment's text confirms that legislatures are permitted to disarm convicted felons.

True, in *Heller*, the Supreme Court associated the right to bear arms with "law-abiding" citizens. *Heller*, 554 U.S. at 625. And, when describing people who possess rights under the Second Amendment, the *Bruen* court repeatedly used the phrase "law-abiding, responsible citizens." *Bruen*, 597 U.S. at 26. Yet, neither case specifically held that the plain text of the Second Amendment does not apply to felons. As a result, district courts in this Circuit are split on the issue. *See United States v. Stringer*, No. 23-CR-20003, 2024 WL 3609058, at *9 (C.D. Ill. July 30, 2024) (citing *United States v. Khiry Jackson*, 2023 WL 7160921, at *2-3 (N.D. Ill. Oct. 31, 2023) (collecting cases). Due to the lack of clear guidance or controlling authority, this Court will assume, without deciding, that felons are among "the people" protected by the Second Amendment and will proceed to the second step proscribed by *Bruen*: whether § 922(g)(1)'s disarmament of felons "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

In *Atkinson v. Garland*, the Seventh Circuit Court of Appeals directed district courts to consider five questions when analyzing whether a statute is part of this country's historical tradition of firearm regulation. *Atkinson v. Garland*, 70 F.4th 1018, 1023-24 (7th Cir. 2023). In summary, this Court is to ask:   (1) Does § 922(g)(1) address a "general societal problem that has persisted since the 18th century?" (2) What does history tell us about disarming those convicted of crimes generally and of felonies in particular? (3) Are there broader historical analogues to § 922(g)(1) during the periods that *Bruen* emphasized, including, but not limited to, laws disarming "dangerous" groups other than felons? (4) If there are analogous laws, do those laws supply enough of a historical tradition (as opposed to isolated instances of regulation) to support § 922(g)(1)? and (5) If individualized assessments for a distinction between violent and non-violent felonies are appropriate, how should a court define a non-violent or a non-dangerous felony—and what evidence can a court consider in assessing whether a particular felony conviction was violent? *Id.*

The Government has answered those questions, while Williams has failed to provide any of the analysis required by *Atkinson*. Nor has he disputed the Government's assessment. The Court thus adopts the Government's well-reasoned and well-researched historical analysis. (*See* Doc. 30).

First, Section 922(g)(1) addresses a "general societal problem that has persisted since the 18th century" in that it disarms people who, like felons, are untrustworthy adherents to the rule of law. The historical record discussed by the Government demonstrates that legislatures historically have had wide latitude to exclude felons from

exercising certain rights, including the right to bear arms, as a consequence of their convictions. *See* Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 28-29 (1868); *see also United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010) (per curiam) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'").

Second, by the time the Second Amendment was ratified in 1791, there was an established tradition of legislatures categorically disarming groups who they feared would disregard the law. These regulations prioritized social order and respect for the law over a preexisting right to self-defense. *See Atkinson*, 70 F.4th at 1034 (Wood, J., dissenting) ("During the American Revolution, several states passed laws providing for the confiscation of weapons owned by persons who refused to swear an oath of allegiance to the state or to the United States."). Furthermore, there were no meaningful founding-era disputes regarding the lawfulness of disarming criminals, and throughout early American history, convicted felons were subject to estate forfeiture and even capital punishment for non-violent felonies. If a felon could potentially be subject to the death penalty or forfeiture of their entire estate as punishment for even a non-violent offense, then certain disarmament would have been an accepted punishment.

Third, this country has a tradition of disarming dangerous persons other than felons. For example, in *Rahimi*, the Supreme Court held that an individual subject to a restraining order, *e.g.*, one who poses a credible threat to the physical safety of another, may be temporarily disarmed consistent with the Second Amendment. 144 S. Ct. at 1902.

Page 6 of 9

Fourth, these historical analogues are sufficiently similar to § 922(g)(1) and are not "isolated instances of regulation." Section 922(g)(1)'s prohibition on firearm possession is comparable to, and is certainly not greater than, the punishment inflicted on criminals at the founding, which included deprivation of their entire estate or even death. *See Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019) (explaining that "it is difficult to conclude that the public, in 1791, would have understood someone facing death … to be within the scope of those entitled to possess arms").

Having examined the factors provided by *Atkinson*, the Court concludes that § 922(g)(1) is consistent with this Nation's historical tradition of firearm regulation and is constitutional. Williams also argues, however, that the statute is unconstitutional as applied to him.

In *United States v. Gay*, the Seventh Circuit Court of Appeals assumed without deciding "for the sake of argument that there is *some* room for as-applied challenges" by non-violent offenders to § 922(g)(1). *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024), *reh'g denied*, No. 23-2097, 2024 WL 3816648 (7th Cir. Aug. 14, 2024) (quoting *Heller*, 554 U.S. at 626, 635).[1] Citing *Bruen*, the Seventh Circuit noted that the Supreme Court repeatedly used the phrase "law-abiding, responsible citizens" when describing people who possess rights under the Second Amendment. *Id.* (quoting *Bruen*, 597 U.S. at 26). The

---

[1] In *Gay*, the Seventh Circuit sidestepped the question of whether §922(g)(1) is constitutional, while at the same time finding the defendant's argument that the Second Amendment permits felons to possess firearms notwithstanding § 922(g)(1) "hard to square" with the Supreme Court's statement in *Heller* that "longstanding prohibitions on the possession of firearms by felons" are valid. *Id.* (quoting *Heller*, 554 U.S. at 626, 635). Some courts in this circuit have since interpreted *Gay* as foreclosing facial challenges to § 922(g)(1). *See, e.g., United States v. Montgomery*, No. 23-CR-00623, 2024 WL 4240759, at *1 (N.D. Ill. Sept. 19, 2024); *United States v. Barenas-Reynoso*, No. 19-CR-00351-8, 2024 WL 3509757, at *2 (N.D. Ill. July 23, 2024).

defendant in *Gay* did not fit that description, having been convicted of 22 felonies including aggravated battery of a peace officer and possession of a weapon while in prison. *Id.* at 846-47. Gay also possessed the weapon while on parole for his prior felony. *Id.* at 847. The Seventh Circuit emphasized that parole is a form of custody before holding that "parolees lack the same armament rights as free persons." *Id.* The court then concluded that Gay was not a "'law-abiding, responsible' person who has a constitutional right to possess firearms" and rejected his as-applied challenge to the constitutionality § 922(g)(1). *Id.*

Here, Williams has proffered no historical evidence to support his position that only individuals more dangerous than himself should be subject to permanent disarmament. Williams notes that the concept of "dangerous persons" has changed throughout American and British history and often related to people who were involved in rebellions and insurrections. But he has not explained how those crimes are somehow worse than his numerous felony convictions for burglary, aggravated discharge of a firearm, and unlawful possession of methamphetamine. Nor has he explained how he is a law-abiding, responsible person. At only 31 years old, Williams has a significant criminal record with felony convictions going back more than a decade. Thus, the Court finds that Williams is not a "law-abiding, responsible" person who enjoys the constitutional right to possess firearms. Section 922(g)(1) is constitutional as applied to Williams.

## CONCLUSION

For these reasons, the Court finds that § 922(g)(1) does not violate the Second

Page 8 of 9

Amendment as applied to Defendant Douglas T. Williams. Defendant's Motion to Dismiss the Indictment (Doc. 27) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:**   **October 11, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**